# Hood, Admr. *et al.* v. Hammond.

*Bill in Equity to enforce Vendor's Lien on Land.*

1   *Vendor's lien; when acceptance by vendor of note as collateral security not a waiver of lien.*—Where a vendor takes for part of the purchase money of lands sold, the notes of the vendee, which recited that they were given as a consideration for the sale of the land conveyed, and the vendee subsequently sells the land so purchased and receives the note of the sub-purchaser, which is delivered to the original vendor as collateral security to the notes formerly given by his vendee, the acceptance by the vendor of such note of the sub-purchaser, as collateral security, does not constitute a waiver on the part of the original vendor of his lien.

2.  *Same; not lost though debt evidenced by note barred by statute of limitations.*—A vendor's lien for the payment of the purchase money of land is preserved and can be enforced, although an action upon the note or debt is barred by the statute of limitations.

3.  *Same; failure to file claim with administrator or against insolvent estate does not prevent enforcement of lien.*—The failure of a vendor to present notes given by his vendee for the purchase money of land, to the latter's administrator within the time required by the statute of non-claim, or to file such notes in the probate court within nine months after the declaration of insolvency of the vendee's estate, does not destroy the vendor's lien or cut off all remedy for its enforcement.

4. *Same; what necessary for defendant to set off damages sustained for failure to collect note given as collateral security.*
    Where a note given by a sub-purchaser is transferred by the original vendee to the original vendor as collateral security for the notes given by the original vendee, upon a bill filed by the original vendor to enforce his vendor's lien, the original vendee can not recoup or set off damages alleged to have been sustained by him on account of the complainant's failure to collect the note given as collateral security, without showing that such damages have been sustained and the amount thereof.

APPEAL from the Chancery Court of Etowah.

Heard before the Hon. J. R. DOWDELL.

The bill in this case was filed by the appellee, J. D. Hammond, on May 8, 1896, against the appellant, Oscar R. Hood, as administrator of the estate of J. S. Stewart and others, to enforce a vendor's lien upon certain lands described in the bill.

Stripped of all matters not involved in the litigation between the parties to this appeal, the case presented is as follows: On the 1st of April, 1887, complainant, Hammond, was the owner of certain interest in lands described in the bill, which, on that day, he sold and conveyed to J. S. Stewart for ten thousand dollars, two thousand dollars in cash and four notes executed by said Stewart to complainant, for two thousand dollars each, payable in two, four, six and eight months, respectively, with interest from date. These notes recited that they were given "for value in real estate, this day sold and deeded to J. S. Stewart," etc. The deed from complainant to Stewart, executed the same day, recited the consideration to be two thousand dollars in cash and the further consideration of the execution and delivery by the vendee, Stewart, to complainant of said four promissory notes, described above. At the same time and as a part of the same transaction complainant executed and delivered to said Stewart an agreement in writing, reciting the sale of said lands by him to Stewart, and the terms of the sale, and agreeing with the said Stewart, his successors, assigns or associates, if he or they should

(adopting the language of the agreement) "sell any portion of said lands, then if 'he or they shall pay to said Hammond in cash one-third of the amount for said land, or such portion of the same (as) is sold, then I, the undersigned (J. D. Hammond), bind myself to release the vendor's lien on said land, or such portion as may be sold, provided, however, if all of said land shall be sold, it shall not be sold for less than ten thousand dollars, and if only a portion or portions be sold, it must not be sold for a less sum than its *pro rata* share of the ten thousand dollars, as compared to the whole interest sold. This does not prohibit the said parties from selling at lower rates than the above rates, but the undersigned is not bound to release the vendor's lien when sold for less."

That the lands in the first instance were sold to said Stewart, as trustee for himself and four others, who afterwards partitioned the same between themselves, leaving a definite, specified one-fifth portion of the whole, allotted to each.

On the 1st of January, 1890, the said Stewart sold and conveyed to C. D. Henley as trustee for himself and associates, the lots of land partitioned to him in said partition for $6,000,—$1,500 in cash, $1,500 payable May 1, 1890, and $3,000 payable November 1, 1890, for which deferred payments of $1,500 and $3,000, the purchasers executed to said Stewart their two promissory notes for these amounts, respectively, bearing interest from date. Stewart, thereafter, but when does not appear, assigned the said $3,000 note by his blank indorsement, to the complainant, as collateral security for the payment of said two $2,000 original purchase money notes of his to complainant, retaining the other $1,500 note in his possession.

Stewart died February 24, 1892, and on May 12, 1892, the defendant, O. R. Hood, was appointed his administrator. On the 30th of August, 1892, the defendant, Hood, as such administrator, coming into the possession of said $1,500 note retained by his intestate, filed his bill in the chancery court of Etowah county against Henley and associates to enforce the vendor's

lien of his intestate on said lands, for the balance due on said $1,500 note, and obtained a decree of that court against said defendants for the sale of said lands for the payment of the sum of $1,981.63, the balance ascertained to be due thereon; and the register, under the decree of the court, advertised and sold said lands so partitioned to said Stewart; and defendant became the purchaser of the same for the amount of the costs due. To this suit the complainant was not made a party defendant.

The present bill was filed by complainant against the defendant Hood, as administrator, to set aside said decree above referred to; to enforce his vendor's lien on all of said lands sold by him in the beginning to defendant's intestate, for the payment of the amount due on his original purchase money notes for $2,000 each, and also to enforce the vendor's lien on the lands sold to said Henley and associates, for the payment of said $3,000 note given at the same time with said $1,500 note by them to said Stewart, which note was transferred, as stated, by said Stewart to complainant as collateral security for his said original purchase money notes for said lands to complainant.

The defendant O. R. Hood, as administrator, demurred to the bill, assigning in various phases that the bill shows that the complainant had waived his vendor's lien by accepting the note which was given to Stewart by Henley, and that upon the facts stated in the bill the complainants were not entitled to a vendor's lien. Upon the submission upon this demurrer, the court rendered a decree overruling it. Thereupon the defendant O. R. Hood filed an answer to the bill, in which he admitted the averments of the said bill relating to the sale and transfer of the property involved in the controversy, and the execution of the several notes therefor, and the assignment of the note for three thousand dollars by J. S. Stewart to the complainant. The defendant further averred in his answer, by way of defense, that the complainant had waived his lien on the original note by accepting the note for three thousand dollars given by Henley as collatertl security

for the balance due upon the original notes given by
Stewart to complainant; and further that the complai-
ant, by failing to protest said note for three thousand
dollars, and by failing to collect the money due upon
it of the maker, C. D. Henley, and out of the prop-
erty owned by Henley, has damaged the estate of the
intestate to that extent, which must be taken as a
payment; and further that the estate of Stewart, of
which the defendant Henley is administrator, had been
declared insolvent, and that the original notes were
never filed in the office of the judge of probate as a
claim against said estate, and that by reason of not
having been so filed, the said notes owned by the com-
plainant are barred and the estate of said Stewart is
not liable therefor, and that the three thousand dol-
lar note reverts to the respondent, Henley, as adminis-
trator, and that the complainant cannot maintain the
present bill to enforce the vendor's lien for the amount
due on said notes.     It was further averred in said
answer that the note given by Henley to the respond-
ent's intestate for $1,500 had come into the hands of
the respondent Hood, as such administrator, and that
he had filed a bill and had a vendor's lien declared in
his favor as administrator of the estate of said Stewart,
and the lands sold by Stewart to Henley had been sold
under a decree declaring said vendor's lien and pur-
chase by the respondent Hood as such administrator.
The respondent asked that his answer to the bill be
taken and treated as a cross-bill and that upon the
final hearing the chancellor would decree that the
complainant was not entitled to the relief prayed for,
and so far as the respondent Hood is concerned, that
the chancellor will deny any lien in favor of the com-
plainant as to the land sold by respondent to Henley,
and which was purchased by the respondent Hood un-
der a decree declaring a vendor's lien in his favor upon
said land.

To the cross-bill of the defendant the complainant
demurred, assigning in various ways that the facts
averred in said answer and cross-bill constitute no
ground or reason for the complainant's not having the
relief prayed for.

Upon the submission of the cause upon this demurrer and the cross-bill the demurrer was sustained. No evidence was taken in the case, and it was submitted for final decree upon the bill, answer and exhibits to each, and on agreement of counsel as to the existence of certain facts alleged in the bill and the cross-bill.

On the final submission of the cause the chancellor rendered a decree declaring that the complainant was entitled to the relief prayed for. He further decreed that the $3,000 note mentioned in the bill was turned over to complainant by respondent's intestate before his death as collateral security for the balance due on the said two original notes for purchase money, for $2,000 each, subject to the credits indorsed on same. He ascertained that the sum of $5,571.48 was the balance due complainant on said two notes on the 28th of February, 1898, the day the cause was submitted; and that $4,758 was the amount due on the same date on said $3,000 collateral security note, making $813.48 in favor of the amount due on said original notes.

The remainder of the decree is devoted to the manner in which the said sum of $5,571.48, due on the original purchase money should be paid, and how, in default of the payment of the same, the lands mentioned in the bill, as described in the decree, should be sold and their proceeds applied, all in a manner and such order as is not in anywise questioned as to its correctness.

There were many parties defendant who had interests, but none of them assail the decree rendered on appal, except the defendant Hood, as administrator of said Stewart. The case is narrowed, therefore, on this appeal as to the correctness of the decree between complainant and the defendant Hood as administrator, who alone assigns error. The rendition of the several decrees are here separately assigned as error.

O. R. Hood, for appellant.—No principle of law is better settled in Alabama than that if a vendor accepts independent security for the purchase money of real estate he waives, abandons or releases his vendor's

[Hood, Admr. *et al.* v. Hammond.]

lien on said real estate by the acceptance of said security.—*Walker v. Struve,* 70 Ala. 167; *Thomas v. Caldwell,* 60 Ala. 644; *Williams v. McCarty,* 74 Ala. 295; *Carroll v. Shepard,* 78 Ala. 358. The lien is presumptively waived by the vendor taking collateral security.—*Woodall v. Kelly,* 85 Ala. 368; *Jackson v. Stanley,* 87 Ala. 271.

A claim against an insolvent estate, not filed within nine months is forever barred and destroyed as a subsisting debt.—*Sharp v. Herrin,* 32 Ala. 502; *Bell v. Andrews,* 34 Ala. 538; *Puryear v. Puryear,* 34 Ala. 555; *Sharp v. Sharp,* 35 Ala. 574; *Ray v. Thompson,* 43 Ala. 434; *Watson v. Rose,* 51 Ala. 292; *Walden v. Speigner,* 87 Ala. 390. The owner of such claim not filed within nine months ceases to be a creditor.—*Walden v. Speigner,* 87 Ala. 390. See also *Watson v. Rose,* 51 Ala. 292; *Shelton v. St. Clair,* 64 Ala. 365; *Wright v. Dunklin,* 83 Ala. 317; *Chandler v. Wynne,* 85 Ala. 301.

It was appellee's duty, when he accepted the pledge, to keep it with ordinary care, and he was bound to use reasonable diligence to secure the payment of the Henley note when it became due, and any failure on his part to take steps in the ordinary course of collection, would render him responsible.—Lawson on Bailments, § 58; *May v. Sharp,* 49 Ala. 140; *Jenkins v. Pye,* 12 Pet. 241; *Gadden v. Kimmel,* 99 U. S. 201; *Hanna v. Holton,* 21 Amer. Rep. 20.

JAMES AIKEN, *contra.*—The recital in the original notes given by the complainant, that they were given "for value received in real estate this day sold" to the maker of the note, and the fact that the notes were described in the deed as given for a part of the purchase money, show conclusively that the vendor's' lien was retained by the complainant.—*Bryant v. Stevens,* 58 Ala. 636; *Tedder v. Steele,* 70 Ala. 347.

The acceptance by the vendor of the note of Henley as collateral security for the notes of Stewart, was not a waiver of the vendor's lien.—*Chapman v. Peebles,* 84 Ala. 383; *Roper v. McCook,* 7 Ala. 318; *Sampson v. Fox,* 109 Ala. 666; *McGee v. Slater,* 50 Ala. 431.

The vendor's lien of the complainant was not destroyed by his failure to file the Stewart notes within nine months after the estate was declared insolvent. *Flinn v. Barbour*, 61 Ala. 530; *Bizzell v. Nix*, 60 Ala. 281; *Mahone v. Paddock*, 44 Ala. 92.

HARALSON, J.—1. The defendant admits in his brief that complainant is entitled to a vendor's lien, to secure the original purchase money notes; but he contends that he waived this lien in accepting the $3,000 note of Henley and associates as collateral security to said original notes. Whether this contention is correct or not must depend on the intention of the parties in the transaction between them.

"A specific intention to reserve a vendor's lien, at the time the contract is made, is not necessary to its existence; it arises by implication, as an incident to the contract, unless there is satisfactory evidence of a purpose to exclude it.—*Carver v. Eads*, 65 Ala. 190; *Sims v. Nat. C. Bank*, 73 Ala. 248. The lien exists independent of any such agreement, upon the equitable principle, that in good conscience, one man ought not to buy and retain the lands of another, without paying the consideration money for which they were sold; and, whoever resists the enforcement of the lien, assumes the burden of showing that it has been intentionally displaced or waived by the consent of parties." If under all the evidence that question remains in doubt, the lien attaches.—*Wilkinson v. May*, 69 Ala. 33; Jones on Liens, § 1064.

The fact that the notes recited that their consideration was the sale of land, and that the deed, the same day executed, describes the notes so taken as a consideration for the sale of the lands conveyed, evidence an intention of the parties, that a vendor's lien should be retained, even in cases where collateral security had at the time been given.—*Tedder v. Steele*, 70 Ala. 347. There is nothing in the fact, that after Stewart sold lands on which the lien existed, he voluntarily transferred to complainant as collateral to his own notes, this $3,000 note of his vendees, to show that complainant, in ac-

cepting the same for the purposes intended, waived his vendor's lien. Such transfer tended to show, that Stewart intended thereby to place said note where it properly belonged,—in the hands of him who held a prior lien on the lands, and to allow his said vendees to pay said note to complainant, and thereby, to that extent, discharge the lien on the property they had purchased, strengthening, that far, and entirely, if sufficient to pay what should remain due on his notes, the integrity of their title to the same. It will not be presumed from the mere acceptance of said note as collateral to his debt, that complainant intended to waive his lien, as he had an agreement with Stewart, how his lien might be waived, which agreement the transfer of this note did not in any wise impair.—*Tedder v. Steele*, 70 Ala. *supra.* It is not pretended that the $3,000 note was not a lien on the land sold by Stewart to Henley and associates. That fact is admitted by defendant's counsel. The complainant, by its transfer to him, it is very clear, became entitled to the same rights to enforce the vendor's lien, on the lands for which it was given, for the payment of the same, that Stewart had.—3 Brick. Dig. 615, § 88.

2. Stewart's estate was declared insolvent, and more than nine months had passed, since the declaration of insolvency, before the present bill was filed. Defendant insists, that complainant failed to file the said original purchase money notes within nine months after the declaration of insolvency of said estate, and that such failure destroyed them as claims against the estate; that the vendor's lien on the lands for which they were given, was thereby destroyed, and that the $3,000 note held by complainant as collateral security for their payment, reverted to, and became the property of defendant. But this contention is untenable. If it be true that these notes were not filed in time to entitle them to share in the distribution of the insolvent estate among creditors, that fact did not destroy the lien they operated for their payment, on the land for which they were given. The lands of a decedent on which valid subsisting liens are existing at his death, do not pass into

the administration of his estate, whether solvent or insolvent, for distribution or the payment of debts, unaffected by such liens, but subject to them. They may be enforced against the lands by the parties in whose favor they exist. The creditors of an insolvent estate, have no right or claim to the lands or the proceeds of them, until such prior liens are satisfied; and the administrator, when it is to the interest of the estate to do so, may discharge them himself,—for the purpose of reaching and utilizing the residuum,—in the course of administration.—*Patapsco G. Co. v. Ballard, Admr.,* 107 Ala. 110; *McNeill v. McNeill,* 36 Ala. 110; *Calhoun v. Fletcher,* 63 Ala. 574; *Stovall v. Clay,* 105 Ala. 105, 110.

Accordingly, it has been repeatedly decided in this court, that a vendor's lien for the payment of the purchase money of lands is preserved, though the statute of limitations has operated a bar to the recovery of the purchase money as a debt.—*Ware v. Curry,* 67 Ala. 274; *Bizzell v. Nix,* 60 Ala. 281; *Flinn v. Barber,* 61 Ala. 530; *Shorter v. Frazier,* 64 Ala. 74. In the last case cited, it was also held, that the demand for its enforcement is "not *stale,* within the sense of that term, as used in courts of equity, unless its enforcement is delayed for twenty years after the purchase money becomes due and payable.—*Terrell v. Cunningham,* 70 Ala. 100, 107. Nor can a failure of the vendor to present his lien notes to the administrator within the time required by the statute of non-claim, or to file them in the probate court within nine months after the declaration of insolvency of the estate, cut off the lien and remedy for its enforcement. Such failures would only operate to bar the right of the vendor to participate in the distribution of the estate.—*Mahone v. Haddock,* 44 Ala. 92; *Flinn v. Barber,* 61 Ala. 530; *Smith v. Gillman,* 80 Ala. 296.

3. It is again insisted, that complainant did not use due diligence in collecting the collateral note, and defendant was thereby damaged. A sufficient reply to this contention, is found in the fact, that if defendant was damaged by the neglect in this respect of the com-

plainant, the defendant cannot recoup or set-off such damages, without showing that such damages have been sustained and the amount thereof. There was no evidence introduced by him from which it could be reasonably ascertained that complainant did not use ordinary diligence to collect, or that defendant suffered any damage from him in this respect; and none to show the amount thereof, if any.—*McGee v. Slater,* 50 Ala. 431; *Sampson v. Fox,* 109 Ala. 662.

There is no room for the consideration of the question of *laches* on the part of complainant, on the facts here presented, for not having filed his bill at an earlier period than he did.

From what has been said, it will appear that the demurrer to the bill was not well taken, and that the demurrer to the cross-bill of defendant was properly sustained. The grounds of demurrer in each case, are sufficiently covered by the principles above announced, and except as noticed they are not insisted on.

We have considered such of the errors assigned as have been insisted on in argument. Finding no error in the decree below, of which defendant can complain, let it be affirmed.

Affirmed.